No. 24-10674-A

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

Nicholas Bullock,

*Plaintiff-Appellant*,

v.

Charlie Paris, *et al*.

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Georgia

No. 2:23-cv-00054-SCJ

**APPELLANT'S OPENING BRIEF**

Nicholas Bullock
1612 Laurel Trail
Ellijay, Georgia 30536
706-273-9860

**No. 24-10674-A**
**Nicholas Bullock v. Charlie Paris,** *et al.*

**Certificate of Interested Persons and**
**Corporate Disclosure Statement**

Bradley, Lisa, Gilmer County Board of Tax Assessors

Clark, David Isaac, Private Practice Attorney, Representing Gilmer County

County of Gilmer, State of Georgia, the

Davis, Gerald, Vice-Chairman, Gilmer County Board of Tax Assessors

Engel, Gary, Gilmer County Board of Tax Assessors

Gooch, Theresa, Chief Appraiser, Gilmer County Board of Tax Assessors

Johnson, Amy Elizabeth, Clerk of Superior Court, Gilmer County, Georgia

Jones, Steve C., United States District Judge

Logan, William, Chairman, Gilmer County Board of Tax Assessors

Marshall, John, Post 2 Commissioner, Gilmer County Board of Commissioners

Marshall, Rebecca, Gilmer County Tax Commissioner

Nicholson, Stacy, Sheriff, Gilmer County Sheriff's Office

Paris, Charlie, Chairman, Gilmer County Board of Commissioners

Parker, Hubert, Post 1 Commissioner, Gilmer County Board of Commissioners

Ray, Ryan L., Attorney for Defendants

Smith, Jim, Director, Planning and Zoning, Gilmer County, Georgia

State of Georgia, the

Williamson, John, Gilmer County Board of Tax Assessors

Wlochowski, Art, Director, Gilmer County Code Enforcement

Womack, Ronald R., Attorney for Defendants

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant does not believe that oral argument would benefit this case.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ............. C-1

Statement Regarding Oral Argument ................................................................. i

Table of Contents ............................................................................................ ii

Table of Citations ........................................................................................... v

Jurisdictional Statement .................................................................................. viii

Statement of the Issues .................................................................................... 1

Statement of the Case ...................................................................................... 3

      (i) Background .......................................................................................... 3

      (ii) Statement of the Facts ....................................................................... 5

      (iii) Standard of Review .......................................................................... 14

Summary of the Argument ............................................................................... 15

Argument ........................................................................................................ 19

      I.    Eleventh Amendment Immunity and § 1983 Case Law ................... 19

            A.    Eleventh Amendment ........................................................... 19

                  1. Eleventh Amendment Immunity doesn't apply to County employees. ............................................................. 19

                  2. The Eleventh Amendment does not bar suits for injunctive relief against State employees sued in their official capacities. ............................................................. 20

3. The Eleventh Amendment does not bar suits against State employees sued in their individual capacities. ........... 21

B.    Personhood for the Purposes of § 1983 ................................. 22

1. Counties and their employees are "persons" within the meaning of § 1983. .............................................................. 22

2. State officials sued in their official capacities are "persons" within the meaning of § 1983 when an injunction is sought. ............................................................ 22

3. State employees sued in their individual capacities are "persons" within the meaning of § 1983. ............................ 23

II.    Qualified Immunity ......................................................................... 24

A.    Qualified Immunity is Triable ............................................... 24

B.    The "Officialness" of an Act is not a Defense ...................... 26

III.    Stacy Nicholson ............................................................................. 27

IV.    Amy Johnson .................................................................................. 28

A.    Laws that Govern the Clerks of Court ................................... 28

1. Duties of the Clerks. ........................................................ 28

2. Clerks are required to record affidavits with the land records. ............................................................................... 29

3. Clerks are barred by State law from examining documents pertaining to real or personal property. ............. 30

4. The Clerks take oaths to record what they ought. ........... 31

5. The Legislature has criminalized the refusal to record
documents. ............................................................................ 32

B.     Case Law Concerning Judicial Immunity ............................ 33

1. Ministerial vs Discretionary tasks. .................................. 33

2. Judicial Immunity does not apply to ministerial tasks. ... 34

C.     Ms. Johnson is Not Immune from Suit ................................ 37

V.  Analysis of 28 U.S.C § 1341 ............................................................. 38

A.     Official Capacity Claims ...................................................... 38

1. Plaintiff's religious land use claims have never been
heard in State court or afforded due process. ...................... 38

2. Analysis of  28 U.S.C § 1341. ......................................... 40

3. Facts on the Record. ........................................................ 41

4. Analysis of Plaintiff's specific case. ................................ 42

B.     John Williamson, Gerald Davis, William Logan,
Gary Engel, Lisa Bradley, and Theresa Gooch
are not Immune from Suit .............................................................. 44

VI.  Rebecca Marshall ............................................................................. 46

VII.  David Clark and Charlie Paris ....................................................... 47

A.     Illegality or Lack of Authority is No Defense ...................... 47

B.     David Clark and Charlie Paris are Not Immune from Suit ... 48

Conclusion ........................................................................................... 50

# TABLE OF CITATIONS

**Cases**                                                      **Page(s)**

*Bose Corp. v. Consumers Union,*
    466 U.S. 485 (1984) ..............................................................    14

*\*Ex Parte Virginia,*
    100 U.S. 339 (1879) ..............................................................    36

*\*Ex parte Young,*
    209 U.S. 123 (1908) ..............................................................    20, 21

*\*Forrester v. White,*
    484 U.S. 219 (1988) ..............................................................    35, 36

*\*Hafer v. Melo,*
    502 U.S. 21 (1991) ................................................................    21, 23, 26

*\*Kentucky v. Graham,*
    473 U.S. 159 (1985) ..............................................................    22, 23

*Miller v. California,*
    413 U.S. 15 (1973) ................................................................    14

*\*Marbury v. Madison,*
    5 U.S. 137 (1803) ..................................................................    27, 33, 34

*\*Monell v. Department of Soc. Svcs.,*
    436 U.S. 658 (1978) ..............................................................    22

*\*Monroe v. Pape,*
    365 U. S. 167 (1961) ............................................................    26, 47-49

*Northern Insurance Company of New York v. Chatham County,*
    547 U.S. 189, 193 (2006) ....................................................    19-20

v

*Pennekamp v. Florida,*
328 U.S. 331 (1946) ............................................................... 14

*\*Scheuer v. Rhodes,*
416 U.S. 232 (1974) .......................................................... 20, 21, 24, 25, 26

*\*Supreme Court of Virginia v. Consumers Union,*
446 U.S. 719 (1980) ............................................................... 36

*\*Will v. Michigan Dept. of State Police,*
491 U.S. 58 (1989) ................................................................. 22-23

**Federal Statutes**                                                    **Page(s)**

28 U.S.C. § 1341 ....................................................... 38, 40, 44, 46

42 U.S.C. § 1983 ....................................................... viii, *
*\* As this is a § 1983 action, § 1983 is mentioned on almost every page.*

**Georgia State Statutes**                                         **Page(s)**

GA Code § 15-6-52 (2022) ............................................................... 30

GA Code § 15-6-58 (2022) ............................................................... 31, 32

GA Code § 15-6-61 (2022) ............................................................... 28

GA Code § 15-19-50 (2022) ............................................................... 31

GA Code § 15-19-51 (2022) ............................................................... 30, 31

GA Code § 44-2-20 (2022) ............................................................... 29, 30, 34

GA Code § 45-3-1 (2022) ............................................................... 32

GA Code § 45-3-11 (2022) ............................................................... 32

GA Code § 45-11-1(a) (2022) ............................................................ 32, 33

GA Code § 48-5-311 (2022) ............................................................. 43

**Rules**                                                            **Page(s)**

FRCP 54(b) ..................................................................... viii, 5

FRCP 59(e) ..................................................................... viii

# JURISDICTIONAL STATEMENT

This action was brought pursuant to 42 U.S.C. § 1983 for the deprivation of rights under color of law. The District Court has Federal Question Jurisdiction.

On January 22nd, 2024, the District Court entered a partial final judgment.

Plaintiff made timely Motions for Reconsideration (dk 24-27) pursuant to FRCP 59(e), filed contemporaneously on February 16th, 2024.

On February 26th, 2024, the District Court denied Plaintiff's four Motions for Reconsideration, stating that, "*these motions will not be considered by the Court*". (dk 31, pg2).

Pursuant to FRCP 54(b), an appeal in a multi-party action may be taken when (1) an action presents more than one claim for relief or when multiple parties are involved, (2) the Court enters a final judgment on one or more, but fewer than all, claims or parties, and (3) the Court expressly determines that there is no just reason for delay.

As all of the criteria of FRCP 54(b) have been met, this Appellate Court has jurisdiction to hear Plaintiff's present appeal from the final partial judgment entered on January 22nd, 2024 (dk 23).

## STATEMENT OF THE ISSUES

**I.**     The District Court erred in the analysis and application of controlling case law in determining Eleventh Amendment Immunity from suit in a 42 U.S.C. § 1983 action and in determining personhood for the purposes of a § 1983 action.

**II.**     The District Court erred in the analysis and application of controlling case law and/or abused discretion by failing to recognize that Qualified Immunity is a triable issue that Plaintiff has the right to overcome with the benefit of discovery.

**III.**     The District Court erred in dismissing Stacy Nicholson as a Defendant when the evidence already supplied by Plaintiff connects him personally and directly to Plaintiff's allegations.

**IV.**     The District Court erred in dismissing Amy Elizabeth Johnson, by finding that she has Quasi-Judicial Immunity, when the allegations pertain to a ministerial task, not a judicial one.

**V.**     The District Court erred in dismissing John Williamson, Gerald Davis, William Logan, Gary Engel, Lisa Bradley, and Theresa Gooch, pursuant to 28 U.S.C § 1341, because it appears that a statement was misinterpreted in the Complaint by the District Court which lead the Court to believe that Plaintiff had already received due process in State court when he had not.

**VI.** The District Court erred in dismissing Rebecca Marshall, when the allegations in the Complaint are personal capacity claims for alleged unlawful behavior and not a claim for injunction against State taxes.

**VII.** The District Court erred in finding that certain Defendants were not liable for a deprivation of Plaintiff's civil rights which they caused, on the basis that those Defendants did not have the authority to cause those deprivations, contrary to controlling case law.

## STATEMENT OF THE CASE

### (i) BACKGROUND

After Plaintiff reported Defendant David Clark (County Attorney, Gilmer County, Georgia) to the Georgia State Bar Association for lying to a judge on the record in the Autumn of 2021 (dk 14, pg 1-2), Plaintiff began to experience ongoing harassment at his property (dk 1, pg 3-6, 23-25, 30-33, 40-42; dk 14, pg 1-9, 15; dk 15, pg 2-4; dk 20-2, pg 1-2; dk 22-1, pg 2; dk 29-2, pg 2), as well as a complete denial of all County-level functions (dk 1, pg 2-3, 5-6, 25-30, 42-49; dk 14, pg 8-9; dk 15, pg 2-4; dk 22-1, pg 1; dk 29-2, pg 1-3; dk 29-3, pg 1-2) which went on for several years, and continues to this day.

After exhausting all other possible remedies (actions in State court are unavailable to Plaintiff for reasons that will be stated later), Plaintiff brought this action in Federal Court under 42 U.S.C. § 1983 against David Clark, Charlie Paris (Gilmer County Commission Chairman), and thirteen other individuals, in their individual capacities, seeking compensation for the damages they caused and injunction to stop the ongoing actions which continue to harm Plaintiff.

Plaintiff intended to sue all defendants in their individual capacities, and added a note that Defendants were also sued in their official capacities "as needed".

Plaintiff added this "as needed" provision with the contemplation that certain

injunctions might only be able to issue against an official capacity defendant, but Plaintiff otherwise intended to impose personal liability on Defendants for their *ultra vires* actions.

Before Answers were filed, Defendants made seven separate Motions to Dismiss the case, totaling one-hundred and seventy-three pages. (dk 6-12).

The District Court granted (dk 23) Defendant's various Motions to Dismiss the case, removing all of the individual capacity claims against all Defendants, dismissing the quasi-state-county employees entirely, and leaving only official capacity claims against a small handful of County employees.

Plaintiff believes, for the reasons explained in this Brief, that the District Court erred in dismissing all of Plaintiff's individual capacity claims.

As the Court noted in the Order (dk 23, pg 26), official capacity claims against Gilmer County employees are essentially a lawsuit against the County of Gilmer, even though Plaintiff never sued or intended to sue the County of Gilmer.

As it stands after the Court's January 22nd Order, Plaintiff's suit is now only an action against the County of Gilmer for the tort of trespass.

Plaintiff is not certain if a municipality even *can* trespass.

The *employees* of a municipality, in conducting warrantless searches of Plaintiff's property, as alleged in the Complaint (dk 1, pg 3-6, 23-25, 30-33, 40-42)

and as supported by evidence (dk 14, pg 1-9, 15; dk 15, pg 2-4; dk 20-2, pg 1-2; dk 29-2, pg 2), certainly can be sued for the tort of trespass, but Plaintiff is unsure if or how he might prosecute a case for trespass against a *county*.

The time for appellate intervention in this case is now, as there is little point in proceeding with the case as it currently stands and Plaintiff's only motivation to continue to bring an action for trespass against Gilmer County would be for the purposes of reaching a final judgment to enable him to appeal the removal of all of his individual capacity claims and defendants.

Thus, any delay in reviewing this matter on appeal would be unjust to both Plaintiff <u>and</u> Defendants, as we would all be dragged through pointless litigation just to make an appeal become available upon final judgment, which then, upon reversing the District Court's dismissals, would start the entire matter over again.

Thus, in the interests of both justice and judicial efficiency, this matter should be reviewed now, pursuant to Federal Rule of Civil Procedure 54(b).

**(ii) STATEMENT OF THE FACTS**

(1) Around August of 2021, Plaintiff reported Defendant David Clark (County Attorney) to the Gilmer County Commissioners via letter for lying to a State judge on the record (dk 1, pg 21-23; dk 14, pg 1).

(2) A few days after Plaintiff's letter arrived, a Sheriff's vehicle pulled into Plaintiff's driveway with a uniformed Deputy and a plain-clothes man. (dk 1, pg 23-24; dk 14, pg 2).

(3) Around October of 2021, Plaintiff reported Mr. Clark to the Georgia State Bar Association in a Bar Grievance, for lying to a judge on the record. (dk 1, pg 24; dk 14, pg 2).

(4) A few days after Plaintiff's Grievance arrived, Plaintiff caught Deena Wright, a County Tax Assessor, on his private property, taking photos of shovels inside Plaintiff's tool shed. (dk 1, pg 24-25; dk 14, pg 2-3).

(5) In October of 2021, Plaintiff's parents deeded property to Plaintiff, for the establishment of his Ministry, which includes growing vegetables to distribute to those in need. (dk 1, pg 8-14).

(6) Near the end of October of 2021, Plaintiff sent a document to Defendant Amy Johnson (Clerk of Superior Court) for her to record among the land records which testified to Plaintiff's religious land use. (dk 1, pg 27).

(7) A few weeks later, in November of 2021, Plaintiff received his document back, unrecorded. (dk 1, pg 2-3, 27-28).

(8) According to the rejection letter, Ms. Johnson would not record a document which said that the Lord Yahshua (aka "Jesus Christ") had given Plaintiff

the land for Ministry use, unless the Lord *personally* signed the document in the presence of a notary. Plaintiff was already the owner of record at the time. (dk 1, pg 2-3, 27-28; dk 14, pg 8-9).

(9) Over the course of several years, Plaintiff sent multiple affidavits of religious land use to Ms. Johnson to record. (dk 1, pg 2-3, 27-29; dk 22-1, pg 1).

(10) She has refused to record all of them. (dk 1, pg 2-3, 27-30; dk 14, pg 8-9; dk 15, pg 3-4; dk 22-1, pg 1).

(11) The last Affidavit was mailed to Ms. Johnson in September of 2023, via Certified mail, while this lawsuit was still pending in court. (dk 22-1, pg 1).

(12) As of March, 2024, Plaintiff has not received his recorded document back and Ms. Johnson is ignoring Plaintiff's open records request inquiring for his recorded document. (dk 22-1, pg 1).

(13) It was later learned that Ms. Johnson's repeated refusal to record Plaintiff's documents was at the behest of Charlie Paris and David Clark, which Mr. Paris has already admitted to before multiple witnesses. (dk 1, pg 5, 33-34; dk 14, pg 8-9; dk 15, pg 3-4).

(14) In Spring of 2022, Plaintiff received his first Property Tax Assessment Notice as the new owner of record. Plaintiff responded in a timely fashion, via Certified mail, asserting religious land use. (dk1, pg 31).

(15) The Tax Assessors did not follow State procedure and simply forwarded Plaintiff's property for billing without responding to Plaintiff's assertions. (dk1, pg 31-32).

(16) For several years now, the Tax Assessors have neither removed Plaintiff's Ministry property from the tax roles nor responded to his notices by refuting his assertions of religious land use. (dk 1, pg 3, 31-32).

(17) It was later learned that once again, Charlie Paris and David Clark were behind the Tax Assessors ignoring Plaintiff's notices. (dk1, pg 34).

(18) Plaintiff is constructing his own home with his own hands. (dk 1, pg 9).

(19) Plaintiff's home is mostly complete, but for over a year, Defendants have stonewalled, without giving any reason, the renewal of Plaintiff's building permit. (dk 1, pg 37-38; dk 29-2, pg 1-3; dk 29-3, pg 1-2).

(20) Defendants have since outright refused, without cause, to ever renew Plaintiff's building permit on a mostly complete home. (dk 29-2, pg 1-3; dk 29-3, pg 1-2).

(21) Plaintiff's father was told by Mr. Smith (Director, Gilmer County Planning and Zoning) that it was David Clark (County Attorney) that decided that Plaintiff was not to have his permit renewed. (dk 29-2, pg 3).

(22) Defendants have kept Plaintiff's property under continual surveillance for years, in part to try to find something against Plaintiff, and also, to make sure that Plaintiff cannot continue building without a permit, while they simultaneously refuse to renew it. (dk 1, pg 3-6, 23-25, 30-33, 37-38, 40-42, 53-55; dk 14, pg 1-9, 15; dk 15, pg 2-4; dk 20-2, pg 1-2; dk22-1, pg 2; dk 29-2, pg 2; dk 29-3, pg 1-2).

(23) Plaintiff's mostly complete home is sustaining damage due to exposed parts of the home that Defendant's actions are preventing Plaintiff from weather sealing. (dk 1, pg 37-38; dk 20-2, pg 2-3).

(24) Plaintiff tried to resolve these matters through many Certified letters sent to the County Commissioners, as well as to various other County and State offices, over the course of several years. (dk 1, pg 5, 40-42; dk 14, pg 3-5).

(25) Plaintiff's Certified letters were ignored, and the trespassing at and on Plaintiff's private property continued. (dk 1, pg 3-6, 23-25, 30-33, 40-42; dk 14, pg 3-5; dk 15, pg 2-4; dk 20-2, pg 1-2; dk 29-3, pg 1-2).

(26) The trespass on Plaintiff's property also included the driving of vehicles down Plaintiff's private access road on multiple occasions. (dk 1, pg 4, 31, 40; dk 14, pg 3-5; dk 20-2, pg 1-2).

(27) Plaintiff set up cameras on his property to catch Defendants. (dk 14, pg 5-6).

(28) In November of 2022, Plaintiff sent thirty Certified letters to the County Commissioners, Stacy Nicholson (Sheriff), Jim Smith (Director of Zoning and Planning), and many others, clearly stating that he did not want them coming on his property anymore. (dk 1, pg 32; dk 14, pg 5).

(28) As if in direct response to Plaintiff's letters, a week or two later, two uniformed deputies and a plain-clothes man were caught on camera conducting a warrantless search of Plaintiff's property. (dk 1, pg 32-33; dk 14, pg 5-6; Photographs: dk14, pg 15).

(29) Mr. Smith has admitted to Martin Bullock, Plaintiff's father, that he knew his people were at Plaintiff's property and they did not have a warrant. (dk 29-2, pg 2).

(30) Mr. Paris also admitted, before three witnesses, including Lieutenant Knight of the Gilmer County Sheriff's Department, that Mr. Paris and Mr. Clark had sent people to Plaintiff's property on multiple occasions, and that they never had a warrant. (dk 1, pg 5, 34, 40; dk 14, pg 7-9; dk 15, pg 2-3).

(31) Around February of 2023, Plaintiff was hospitalized in the emergency room twice, for symptoms similar to a heart attack. (dk 1, pg 56-57; dk 14, pg 6-7; dk 15, pg 1-2).

(32) Around February of 2023, Plaintiff was also hospitalized at an impatient mental health facility, due to symptoms consistent with Post Traumatic Stress Disorder, which the mental health professionals that evaluated Plaintiff agreed was likely the result of Defendant's actions. (dk 1, pg 57-58; dk 14, pg 6-7; dk 15, pg 1-2).

(33) The Counselor at the mental health hospital said that Plaintiff was not mentally ill, but was experiencing a normal reaction to the extreme circumstances that he was being subjected to for an extended period of time. (dk 1, pg 57-58; dk 14, pg 6-7).

(34) The Counselor advised Plaintiff that he needed to resolve this matter, and suggested that Plaintiff talk to the Commissioner face-to-face. (dk 1, pg 58; dk 14, pg 6-7).

(35) On February 17th, 2023, Plaintiff and his father, Martin Bullock, visited Mr. Paris in his office at the Commissioner's offices. (dk 1, pg 5, 58; dk 14, pg 7-10; dk 15, pg 2-5).

(36) At the meeting, Mr. Paris admitted before three witnesses that he and Defendant David Clark were responsible for the many repeated visits to Plaintiff's property over a long period of time. This has been supported by affidavits from two of the witnesses. (dk 1, pg 5, 34, 40, 58; dk 14, pg 8; dk 15, pg 2-3).

(37) Mr. Paris also admitted before three witnesses that he and Defendant David Clark were responsible for inducing Amy Johnson not to record Plaintiff's documents. This has been supported by affidavits from two of the witnesses. (dk 1, pg 5; dk 14, pg 8-9; dk 15, pg 3-4).

(38) Mr. Paris said if Plaintiff wanted his affidavits of religious land use recorded, Plaintiff would need to hire an attorney to "argue with David Clark". (dk 14, pg 9; dk 15, pg 4).

(39) Mr. Paris also admitted that he and Mr. Clark were instructing the Tax Assessors to ignore Plaintiff's notices of religious land use. (dk 1, pg 58).

(40) After admitting to committing several felonies, Mr. Paris then stood up and said, "this meeting is over". (dk 14, pg 9; dk 15, pg 4).

(41) The conversation topic then changed and Mr. Paris sat back down and continued the conversation. (dk 14, pg 10; dk 15, pg 5).

(42) Stacy Nicholson (actual Sheriff) then entered the Commissioner's office. (dk 14, pg 10).

(43) Mr. Paris told Mr. Nicholson that Plaintiff was refusing to leave.

(44) Mr. Nicholson told Plaintiff, "you're under arrest", but did not specify what for.

(45) Plaintiff was taken to the County jail. (dk 1, pg 6-8; dk 14, pg 10-13).

(46) While bond was issued by a magistrate within an hour or so of Plaintiff's arrival at jail, Plaintiff was not informed by anyone that he had bond available for three days.

(47) Plaintiff asked repeatedly while in jail if he was being charged with a crime. Each time, the guards said they would check, but they never returned with an answer. (dk 1, pg 51; dk 14, pg 12).

(48) A few weeks after being released from jail, in March of 2023, Plaintiff was once again committed to an in-patient mental hospital due to worsening symptoms, due to being unable to resolve the ongoing issues Defendants were causing, being unable to complete his home, and having no remedy left. (dk 1, pg 36-37).

(49) In March of 2023, Plaintiff's father went to visit Jim Smith in person to discuss renewing the building permit. (dk 29-2, pg 1-3).

(50) At the meeting, Mr. Smith told Martin Bullock that Mr. Smith would need a few days to "locate documents" and would be in touch. (dk 29-2, pg 1-3).

(51) Mr. Smith never called Martin back and Mr. Smith ignored all of Martin Bullock's follow-up phone calls. (dk 29-2, pg 2).

(52) Mr. Smith later admitted, after a year had gone by, in February of 2024, that Defendants had no intention of ever renewing the permit on Plaintiff's mostly

complete home, and Mr. Smith advised Plaintiff's father to call David Clark, before hanging up on him. (dk 29-2, pg 3).

**(iii) STANDARD OF REVIEW**

The Standard of Review is *de novo*, and/or independent review, as this case concerns the infringement of Constitutionally-guaranteed rights.

See for example, *Miller v. California, 413 U.S. 15 (1973)*, ("[T]*he First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary*");

See also, *Bose Corp. v. Consumers Union, 466 U.S. 485 (1984)*, ("*For the rule of independent review assigns to judges a constitutional responsibility that cannot be delegated to the trier of fact, whether the factfinding function be performed in the particular case by a jury or by a trial judge.*");

See also, *Pennekamp v. Florida, 328 U.S. 331 (1946)*, ("*we are compelled to examine for ourselves the statements in issue and the circumstances under which they were made to see whether or not they do carry a threat of clear and present danger to the impartiality and good order of the courts or whether they are of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect.*")

**SUMMARY OF THE ARGUMENT**

**SECTION I: Eleventh Amendment and § 1983 Personhood**

Section One will examine the case law that applies to 42 U.S.C. § 1983 with regard to Eleventh Amendment Immunity as well as personhood within the meaning of § 1983.

We find that § 1983 actions are authorized against (1) County employees, (2) State employees, sued in their <u>official capacities</u> for <u>injunction</u>, and (3) State employees sued in their <u>individual capacities</u>.

This section addresses case law in general terms which will be applied to specific Defendants in later sections.

**SECTION II: Qualified Immunity**

Section Two addresses Qualified Immunity. We look at case law which teaches that Qualified Immunity is a triable issue, based on relevant facts and laws.

**SECTION III: Stacy Nicholson**

Section Three will apply the first two sections with arguments specific to Defendant Stacy Nicholson, showing why it was erroneous to dismiss him from the Complaint.

We show that Mr. Nicholson, sued in his personal capacity, is a person within the meaning of § 1983 and does not have Eleventh Amendment Immunity.

15

**SECTION IV: Amy Elizabeth Johnson**

Section Four applies the first two sections to Defendant Amy Elizabeth Johnson, to show that, because she was sued in her individual capacity, she is a person within the meaning of § 1983 and does not have Eleventh Amendment Immunity.

We will examine Georgia State Statutes which regulate the Clerks of Court and the recording of documents with the land records for the purpose of demonstrating that recording an affidavit with the land records is a *ministerial* task, not a *judicial* task.

We then examine case law that shows that Judicial Immunity does or does not apply based on <u>the nature of the task being performed</u>, not on the person that performs it, and, as such, Ms. Johnson does not have Quasi-Judicial Immunity for her refusal to record Plaintiff's affidavits with the land records.

**SECTION V: 28 U.S.C § 1341**

In Section Five, we identify a misunderstanding in the record that adversely affected the District Court's judgment.

We show that Plaintiff does not have a "*plain, speedy and efficient remedy*" under State law in Plaintiff's specific case and that 28 U.S.C § 1341 would pose no barrier for an official capacity action under the present circumstances.

We then show that, because John Williamson, Gerald Davis, William Logan, Gary Engel, Lisa Bradley, and Theresa Gooch were sued in their individual capacities, they are persons within the meaning of § 1983, do not have Eleventh Amendment Immunity, and 28 U.S.C § 1341 is no barrier to an individual capacity action, because 28 U.S.C § 1341 only bars actions against State taxes, but does not bar individual capacity suits against human beings that happen to be employed as a Tax Assessor.

**SECTION VI: Rebecca Marshall**

Section Six will apply the First, Second, and Fifth sections to Rebecca Marshall and show that because she was sued in her individual capacity, she is a person within the meaning of § 1983 and does not have Eleventh Amendment Immunity.

We will also find that 28 U.S.C § 1341 is no barrier to an individual capacity suit against her, because 28 U.S.C § 1341 only bars actions against State taxes, but does not bar individual capacity suits against human beings that happen to be employed as a Tax Commissioner.

**SECTION VII: DAVID CLARK AND CHARLIE PARIS**

Last, Section Seven will examine the case law pertaining to the meaning of "*acting under color of law*" and demonstrate that a person can be found liable for

acting under color of law even when that person's actions are illegal or done without the authority to do them.

More specifically, we will demonstrate that Defendants David Clark and Charlie Paris are liable under § 1983 for directing others to perform actions which they knew to be illegal, in violation of Plaintiff's civil rights.

**ARGUMENT**

# I.  ELEVENTH AMENDMENT IMMUNITY AND § 1983 CASE LAW

The Eleventh Amendment does not bar this action against any of the Defendants. Before discussing this, however, it is imperative to clarify one important point: this action is brought against all Defendants in their individual capacities.

The note on the Complaint about official capacities "as needed" (dk 1, pg1), was included based on Plaintiff's contemplation, that, in some very specific cases, injunctive relief might need to be brought against the official capacity of an individual.

§ 1983 actions are authorized against (1) County employees, (2) State employees, sued in their <u>official capacity</u> for <u>injunction</u>, and (3) State employees sued in their <u>individual capacity</u>.

## A.    <u>Eleventh Amendment</u>

1. *Eleventh Amendment Immunity doesn't apply to County employees.*

The Eleventh Amendment is inapplicable to Counties and County employees, regardless of the capacity in which they are sued.

Please see, for example, *Northern Insurance Company of New York v. Chatham County, 547 U.S. 189, 193 (2006),* holding that counties have neither

Eleventh Amendment Immunity nor residual common law immunity.

       2. *The Eleventh Amendment does not bar suits for injunctive relief against State employees sued in their official capacities.*

Suits against State employees, in their official capacity, for the deprivation of rights under color of law, have long been permitted in a string of cases since the days of *Ex parte Young, 209 U.S. 123 (1908)*, through to modern day.

So long as it is injunctive relief that is sought, the Eleventh Amendment poses no barrier to suit against State officials in their official capacity.

In the case of *Scheuer v. Rhodes*, the United States Supreme Court wrote, "*[S]ince Ex parte Young, 209 U. S. 123 (1908), it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law. Ex parte Young teaches that, when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is, in that case, stripped of his official or representative character, and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.*". *Scheuer v. Rhodes, 416 U.S. 232 (1974)*.

3. *The Eleventh Amendment does not bar suits against State employees sued in their individual capacities.*

The question of Eleventh Amendment Immunity from suits against State officials brought against their <u>individual capacities</u>, was addressed in *Hafer v. Melo* where, quoting *Scheuer v. Rhodes*, The Supreme Court said, "*"[S]ince Ex parte Young, 209 U.S. 123 (1908)," we said, "it has been settled that **the Eleventh Amendment provides no shield for a state official** confronted by a claim that he had deprived another of a federal right under the color of state law.""*.

They went on to say, "*Insofar as respondents seek damages against Hafer personally, **the Eleventh Amendment does not restrict their ability to sue in federal court**. We hold that state officials, sued in their individual capacities, are "persons" within the meaning of § 1983. **The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts.***" (emphasis mine). *Hafer v. Melo, 502 U.S. 21 (1991).*

Because the Complaint is alleged against each Defendant in their <u>individual capacity</u>, per the Supreme Court's ruling in *Hafer*, the Eleventh Amendment is no bar to suit.

As such, Defendant's allegations that the Eleventh Amendment shields them

from suit, when sued in their individual capacities, must be denied.

**B.** **Personhood for the Purposes of § 1983**

1. *Counties and their employees are "persons" within the meaning of § 1983.*

In the case of *Monell v. Department of Soc. Svcs.*, The United States Supreme Court held that, "*Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies.*". *Monell v. Department of Soc. Svcs., 436 U.S. 658 (1978)*.

2. *State employees sued in their official capacities are "persons" within the meaning of § 1983 when an injunction is sought.*

In the case of *Kentucky v. Graham*, the United States Supreme Court held that, "*official-capacity actions for prospective relief are not treated as actions against the State*". *Kentucky v. Graham, 473 U.S. 159 (1985)*.

In the case of *Will v. Michigan Dept. of State Police*, The Supreme Court noted that § 1983 actions against a person in their official capacity were allowed, provided that the official capacity action was brought seeking only injunctive relief against the official capacity.

The Supreme Court wrote, "*[A] state official in his or her **official capacity**,*

**when sued for injunctive relief**, *would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'"* (emphasis mine). *Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989),* quoting *Kentucky v. Graham, 473 U.S. 159 (1985)*.

       3. *State employees sued in their individual capacities are "persons" within the meaning of § 1983.*

In *Hafer v Melo,* The Supreme Court wrote, "*In Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989), we held that state officials "acting in their official capacities" are outside the class of "persons" subject to liability under 42 U.S.C. § 1983. 491 U.S., at 71. Petitioner takes this language to mean that § 1988 does not authorize suits against state officers for damages arising from official acts.* **We reject this reading of Will, and hold that state officials sued in their <u>individual capacities</u> are  "persons" for purposes of § 1983.**" (emphasis mine).

According to Hafer, *"A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.' "*. *Hafer v. Melo, 502 U.S. 21 (1991).*

## II.  QUALIFIED IMMUNITY

### A.  <u>Qualified Immunity is Triable</u>

Qualified Immunity is not a bar to action, but rather a triable question, based on the facts and circumstances of the case.

In the case of *Scheuer v. Rhodes*, the United States Supreme Court wrote, "***If the immunity is qualified, not absolute, the scope of that immunity will necessarily be related to facts as yet not established either by affidavits, admissions, or a trial record.*** *Final resolution of this question must take into account the functions and responsibilities of these particular defendants in their capacities as officers of the state government, as well as the purposes of 42 U.S.C. § 1983.*" (emphasis mine). *Scheuer v. Rhodes, 416 U.S. 232 (1974)*.

In other words, Qualified Immunity is a defense, which Plaintiff has the right to overcome, with the benefit of Discovery.

*Scheuer* was a case brought against the Governor of Ohio, allegedly in the Governor's individual capacity. The Governor asserted absolute immunity.

The United States Supreme Court disagreed.

In reversing the District Court's dismissal of the complaint on Eleventh Amendment Immunity grounds, The Supreme Court wrote, "*Analyzing the complaints in light of these precedents, we see that **petitioners allege facts that***

**demonstrate they are seeking to impose individual and personal liability on the named defendants for what they claim -- but have not yet established by proof -- was a deprivation of federal rights by these defendants under color of state law.** *Whatever the plaintiffs may or may not be able to establish as to the merits of their allegations, their claims, as stated in the complaints, given the favorable reading required by the Federal Rules of Civil Procedure,* **are not barred by the Eleventh Amendment.** *Consequently, the District Court erred in dismissing the complaints for lack of jurisdiction.*" (emphasis mine). *Scheuer v. Rhodes, 416 U.S. 232 (1974)*.

The Supreme Court also said in *Scheuer*, "*The documents properly before the District Court at this early pleading stage specifically placed in issue whether the Governor and his subordinate officers* **were acting within the scope of their duties under the Constitution and law of Ohio***; whether they acted within the range of discretion permitted the holders of such office* **under Ohio law; and whether they acted in good faith** *both in proclaiming an emergency and as to the actions taken to cope with the emergency so declared. Similarly, the complaints place directly in issue whether the lesser officers and enlisted personnel of the Guard acted in good faith obedience to the orders of their superiors.* **Further proceedings, either by way of summary judgment or by trial on the merits, are required.** *The complaining parties are entitled to be heard more fully than is*

*possible on a motion to dismiss a complaint.*" (emphasis mine). *Scheuer v. Rhodes, 416 U.S. 232 (1974)*.

As we see from the ruling in *Scheuer*, questions such as the scope of an official's duties, and whether they were acting in good faith, are triable issues.

**B.   The "Officialness" of an Act Is Not a Defense**

Because an action under 42 U.S.C. § 1983 must concern an act that the Defendant would assert to be official, the same assertion of officialness cannot also be a barrier to suit under § 1983.

The Supreme Court addressed this head on in *Hafer v. Melo* when they wrote, "*Through § 1983, Congress sought "to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position." Monroe v. Pape, 365 U. S. 167, 172 (1961). Accordingly, it authorized suits to redress deprivations of civil rights by persons acting "under color of any [state] statute, ordinance, regulation, custom, or usage." 42 U. S. C. § 1983. The requirement of action under color of state law means that Hafer may be liable for discharging respondents precisely **because of** her authority as auditor general. **We cannot accept the novel proposition that this same official authority insulates Hafer from suit.***" (emphasis mine). *Hafer v. Melo, 502 U.S. 21 (1991)*.

The Supreme Court took a similar position in *Marbury v. Madison*, where they wrote, "*If one of the heads of departments commits any illegal act, under colour of his office, by which an individual sustains an injury, it cannot be pretended that his office alone exempts him from being sued in the ordinary mode of proceeding, and being compelled to obey the judgment of the law. How, then, can his office exempt him from this particular mode of deciding on the legality of his conduct, if the case be such a case as would, were any other individual the party complained of, authorize the* process?". *Marbury v. Madison, 5 U.S. 137, 171 (1803)*.

## III.  STACY NICHOLSON

As it pertains to the allegations against Mr. Nicholson, namely that he was either directly involved in the trespass and warrantless searches of Plaintiff's property, or negligent in stopping them despite being put on personal notice via Certified Letters (dk 1, pg 32, 41; dk 14, pg 5), we must examine the allegations in light of the case law above.

As Mr. Nicholson is being sued in his individual capacity (dk 1, pg 1), per the discussion in Section I above, Mr. Nicholson is a person within the meaning of § 1983 and does not have Eleventh Amendment Immunity.

Per the discussion of Qualified Immunity in Section II above, Mr. Nicholson cannot simply assert, "I have Qualified Immunity because I am the Sheriff" (dk 6-1, pg 9-10), without making any effort to demonstrate that his actions were lawful.

Because Qualified Immunity is a triable issue, the District Court erred in dismissing Stacy Nicholson at the pleading stage.

As discussed above, the standard of review is *de novo*, and/or independent review, as this concerns the infringement of Constitutionally-guaranteed rights.

## IV. AMY JOHNSON

### A. <u>Laws that Govern the Clerks of Court</u>

1. *Duties of the Clerks.*

GA Code § 15-6-61 (2022) reads, "*It is the duty of a clerk of superior court: [...] To keep in the clerk's office the following: [...] A docket, file, series of files, book or series of books, microfilm records, or electronic data base for recording all deeds, liens, executions, lis pendens, maps and plats, and all other documents concerning or evidencing title to real or personal property.*". GA Code § 15-6-61 (2022).

## 2. *Clerks are required to record affidavits with the land records.*

The specific requirement that a clerk record affidavits against land records is found in GA Code § 44-2-20 (2022), which reads, "*Affidavits referred to in subsection (a) of this Code section **shall** be filed by the clerk of the superior court of the county where the land is located and **shall** contain a caption referring to the current owner and to a deed or other recorded instrument in the chain of title of the affected land. **The clerk of the superior court shall record such affidavits**, **shall** enter on the deed or other recorded instrument so referred to the book and page number on which such affidavit may be recorded, and **shall** index same in the name of the purported owner as shown by such caption in both grantor and grantee indexes in deed records as conveyances of lands are recorded and indexed; and the clerk **shall** receive the same compensation therefor as for recording deeds to lands.*" (emphasis mine).

GA Code § 44-2-20 (2022).

We can see from the repeated use of the word "**shall**", that the Clerk is not granted any discretion by the State Legislature to decide what she will or will not record.

The Legislature does not *allow* the Clerk to record documents at her option, but rather *requires* her to do so.

The affidavits which the Clerk of Superior Court is required to record include affidavits, "*[w]here such affidavits state any other fact or circumstance affecting title to land or any right, title, interest in, or lien or encumbrance upon land.*". GA Code § 44-2-20 (2022).

Ms. Johnson is <u>required</u> by State law to record every affidavit sent to her which pertains to real or personal property. Despite this, she has repeatedly refused to record the various affidavits that Plaintiff has sent her.

      3. *Clerks are barred by State law from examining documents pertaining to real or personal property.*

It is a violation of State law for a non-attorney, and also, for a Clerk of Superior Court, regardless of whether or not that Clerk is an attorney, to practice law, which includes examining documents pertaining to titles and making any determinations with regard to same.

GA Code § 15-6-52 (2022) reads, "*The clerks of the superior courts are prohibited from practicing law in their own or another's name, as a partner or otherwise, in any court except in their own case.*". GA Code § 15-6-52 (2022).

GA Code § 15-19-51 (2022) reads, "*It shall be unlawful for any person other than a duly licensed attorney at law: 1. To practice or appear as an attorney at law for any person other than himself in any court of this state or before any judicial*

*body;*". GA Code § 15-19-51 (2022).

The practice of law, as defined in State law, explicitly includes making any determination as to the validity or invalidity of title documents.

Specifically, GA Code § 15-19-50 (2022) reads, "*The practice of law in this state is defined as: [...] 4. The rendering of opinions as to the validity or invalidity of titles to real or personal property;* ". GA Code § 15-19-50 (2022).

Even if the Clerk of Superior Court were an attorney, she is not permitted to practice law in any case but her own during her tenure in office. Thus, if Ms. Johnson looks at a document and says, "*this does not comport to the laws of Georgia*", then she is making a determination as to the validity or invalidity of a title document, in violation of State law.

4. *The Clerks take oaths to record what they ought.*

The Clerks of Superior Court are required to take an Oath of Office, found in GA Code § 15-6-58 (2022), which reads, "*I do swear or affirm that I will truly and faithfully enter and record **all** the orders, decrees, judgments, and other proceedings of the Superior Court of the County of ___, and **all** other matters and **things which I am required by law to record**; and that I will faithfully and impartially discharge and perform **all** the duties required of me, to the best of my understanding. So help me God."* (emphasis mine). GA Code § 15-6-58 (2022).

Both GA Code § 45-3-1 (2022) and GA Code § 45-3-11 (2022) also require that every public officer take an oath to uphold the Constitution of Georgia and the Constitution of the United States.

A Clerk that refuses to record **any** document that is presented to her for recordation, violates her oath of office. She must record them all. GA Code § 15-6-58 (2022).

*5. The Legislature has criminalized the refusal to record documents.*

It is a criminal offense for Ms. Johnson to refuse to record Plaintiff's documents.

GA Code § 45-11-1(a) (2022) reads, "*If any public officer or other person shall steal, embezzle, alter, corrupt, withdraw, falsify, or **avoid any record**, process, charter, gift, grant, conveyance, or contract; or shall knowingly and willfully take off, discharge, or conceal any issue, forfeited recognizance, or other forfeiture; or shall forge, deface, or falsify any document or instrument recorded or any registry, acknowledgment, or certificate; or shall alter, deface, or falsify any minutes, document, book, or any proceeding whatever of or belonging to any public office within this state; or if any person shall cause or procure any of these offenses to be committed, or to be in any manner concerned therein, **he shall be guilty of a felony** and, upon conviction thereof, shall be punished by imprisonment*

*and labor in the penitentiary for not less than two years nor more than ten years."* (emphasis mine). GA Code § 45-11-1(a) (2022).

A Clerk that refuses to record a document commits a felony.

**B.    Case Law Concerning Judicial Immunity**

1. *Ministerial vs Discretionary tasks.*

Before discussing Judicial Immunity, we must first address the question of *ministerial* vs *discretionary* positions, as much case law turns on the distinction.

In the case of *Marbury v. Madison*, The United States Supreme Court examined the question of what latitude could or should be afforded to public officials.

The Court determined that some duties, such as the duties of the President of the United States, were *discretionary* and afforded great latitude, while other officials, such as a secretary or clerk that have duties clearly defined by legislative acts, were in *ministerial* positions, and those individuals could not exercise discretion in executing the duties of their offices, especially when the legislature had clearly defined those duties.

They found this to be especially true when the failure or refusal to perform *ministerial* duties by a public official affected the rights of other people.

The Supreme Court wrote in their opinion, "*But when the legislature proceeds to impose on that officer other duties: when he is directed peremptorily to perform certain acts; when the rights of individuals are dependent on the performance of those acts; he is so far the officer of the law; is amenable to the laws for his conduct; and cannot at his discretion sport away the vested rights of others.*". *Marbury v. Madison, 5 U.S. 137, 166 (1803)*.

In other words, when the Georgia State Legislature directs Ms. Johnson, as Clerk of Superior Court, to record affidavits and other records pertaining to real property with the land records, she is given a *ministerial* task, and does not have discretionary authority to refuse to follow the peremptory directives of the Georgia State Legislature.

Because the Legislature, in defining the role and duties of the Clerk of Court have not afforded Clerks any latitude in deciding what they **must** record, Ms. Johnson's duties as Clerk are *ministerial,* and she has no discretion to decide if she will record a document. GA Code § 44-2-20 (2022).

2. *Judicial Immunity does not apply to ministerial tasks.*

Ms. Johnson has attempted to assert Quasi-Judicial Immunity (dk 9-1, pg 7-9) by citing case law that extends Judicial Immunity to clerks when they are following a judge's orders, as part of a judicial process.

But refusing to record Plaintiff's many affidavits was not part of any judicial process, and no judge was involved.

The recording of affidavits with the land records is clearly a ministerial task as defined by the State Legislature.

Arguing that a clerk has Judicial Immunity simply because she is a clerk raises an argument that has already failed before the United States Supreme Court in several cases involving actual judges, not just clerks.

The Supreme Court has consistently held that it is, "*the nature of the function performed, not the identity of the actor who performed it*", that informs Judicial Immunity. *Forrester v. White, 484 U.S. 219 (1988)*.

In *Forrester v. White*, Judge White was sued for discharging a staff member. He claimed Judicial Immunity.

The Supreme Court found that hiring and firing decisions, "*like many others involved in supervising court employees and overseeing the efficient operation of a court -- may have been quite important in providing the necessary conditions of a sound adjudicative system*", but "*[t]he decisions at issue, however, were not themselves judicial or adjudicative.*", and held that Judicial Immunity does not apply to judges when they are performing *administrative* tasks. *Forrester v. White, 484 U.S. 219 (1988)*.

In the case of *Ex Parte Virginia*, Judge Cole asserted Judicial Immunity for his selection of jurors, claiming that selecting jurors was a court function, and he, being the judge, was immune for his acts in making juror selections.

The United States Supreme Court disagreed.

Just as in *Forrester*, The Supreme Court determined that, "*Whether the act done by him was judicial or not is to be determined by its character, and not by the character of the agent. Whether he was a county judge or not is of no importance*.". *Ex Parte Virginia, 100 U.S. 339 (1879)*.

The Supreme Court determined that the job of juror selection could have been assigned to any person other than the judge, and there would be no immunity for the task. Because the task of juror selection was "*merely a ministerial act*", Judge Cole did not have Judicial Immunity for *that* task. *Ex Parte Virginia, 100 U.S. 339 (1879)*.

Please see also, *Supreme Court of Virginia v. Consumers Union, 446 U.S. 719 (1980)*, holding that the Chief Justice of the Virginia Supreme Court could be liable under 42 U.S.C. § 1983 for acts done in his enforcement capacity, but not for acts done in a legislative capacity.

The fact that the Georgia State Legislature has designated the Office of the Clerk of Superior Court as the storage location for land records does not make the recording of land records a *judicial* task.

And the fact that the Clerk of Superior Court is given the task of maintaining land records does not give the Clerk *Judicial Immunity* for the *ministerial* tasks related to the storage of those land records.

The recording and maintaining of land records is a *ministerial* act, which the Legislature could have just as easily assigned to any other department, or even to a separate dedicated office.

## C.     <u>Ms. Johnson is Not Immune from Suit</u>

As Ms. Johnson is being sued in her individual capacity (dk 1, pg 1), per the discussion in Section I above, Ms. Johnson is a person within the meaning of § 1983 and does not have Eleventh Amendment Immunity.

In accordance with the case law above, it is the *ministerial* nature of recording affidavits on the land records that prevents Ms. Johnson from raising Judicial Immunity as a bar to action against her.

Her employment as "Clerk of Court" is of no importance in determining Judicial Immunity for non-judicial tasks. As such, the District Court erred in dismissing Amy Johnson based on her assertions of Judicial Immunity.

As discussed above, the standard of review is *de novo*, and/or independent review, as this concerns the infringement of Constitutionally-guaranteed rights.

## V.   ANALYSIS OF 28 U.S.C § 1341

### A.   <u>Official Capacity Claims</u>

1. *Plaintiff's religious land use claims have never been heard in state court or afforded due process.*

In the Order (dk 23), the District Court wrote, "*Notably, Plaintiff alleges that he availed himself of this [State procedure for tax dispute] Doc. No. [1] at 60-79. While Plaintiff did not agree with the ultimate adjudication of his claim in the Gilmer County Case, his dissatisfaction affords no basis for this Court to obtain jurisdiction over his claims related to the taxation of his property*". (dk 23, pg 24).

Plaintiff must clarify an important point: **Plaintiff's assertions that his property is being used for Ministry purposes has never been heard in State court, nor has it been afforded any due process in accordance with State law.**

It is very important to lay out the order of events, because the ruling in the Order stated that Plaintiff has already received due process, when Plaintiff has not.

The Complaint mentions a case that went before State Superior Court in 2020, in which Defendant David Clark lied to a judge on the record, and Plaintiff subsequently reported Mr. Clark to the State Bar for doing so.

That 2020 case did not concern religious land use in any way.

Further, Plaintiff's parents were the owners of record on the deed at the time of that 2020 case.

That case was dismissed in June of 2021.

In August of 2021, Plaintiff began to report Mr. Clark, first to the Commissioners, and then to the State Bar.

In October of 2021, Plaintiff's parents deeded the land to Plaintiff, so Plaintiff could establish his Ministry there.

It was at the end of October of 2021 that Plaintiff first attempted to record a document attesting to Plaintiff's religious land use with the Clerk of Superior Court.

Plaintiff's multiple attempts to record documents with the land records attesting to religious land use, in the months (and years) that followed, were all refused.

Plaintiff's first notice to the Tax Assessors with regard to religious land use was in the spring of 2022, which was the first time Plaintiff received an assessment notice as the new owner of the property.

Plaintiff's notice to The Assessors in the spring of 2022 was ignored.

Subsequent notices have also been ignored.

Plaintiff has never received any due process with regard to religious land use.

It was not until February 17th of 2023 that Plaintiff learned from the admissions of Mr. Paris (dk 1, pg 33-34; dk 14, pg 7-9; dk 15, pg 2-4) that Mr. Clark and Mr. Paris had interfered with Plaintiff's ability to record documents on the land records, and had also instructed the Tax Assessors to simply ignore Plaintiff's letters.

2. *Analysis of 28 U.S.C § 1341.*

First, we look specifically at Official Capacity actions against the persons holding office as the Board of Tax Assessors, in light of 28 U.S.C § 1341.

28 U.S.C § 1341 reads, "*The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.*".  28 U.S. Code § 1341.

The plain reading of this law affords Plaintiff the opportunity to have a State tax matter heard in Federal court, when Plaintiff can demonstrate that Plaintiff has no "*plain, speedy and efficient remedy*" in State court.

State law may very well have a tax appeal procedure. But the test under 28 U.S.C § 1341 is not whether a remedy might exist under State law for *someone*

*else*, but rather, does a "*plain, speedy and efficient remedy*" in State court exist for this specific Plaintiff, in this specific case.

The evidence on record says "no".

This specific Plaintiff does not have a remedy in State court.

      *3. Facts on the Record.*

The following facts are already on the record:

(1) Amy Johnson is refusing to record Plaintiff's affidavits, without good cause, in an effort to block Plaintiff from having the evidence he needs to provide to the Tax Assessors. (dk 1, pg 2-3, 27-30; dk 14, pg 8-9; dk 15, pg 3-4; dk 22-1, pg 1).

(2) The Tax Assessors are ignoring Plaintiff's Certified letters, and they are not following the State procedure. (dk1, pg 31-32).

(3) Mr. Paris has admitted that he and Mr. Clark have induced Ms. Johnson to not record Plaintiff's documents, and have induced the Tax Assessors to ignore Plaintiff's Certified letters and not follow the State appeal process. (dk 1, pg 5, 33-34; dk 14, pg 8-9; dk 15, pg 3-4).

(4) Plaintiff's religious land use assertions have never been heard or afforded due process under State law. (dk1, pg 31-32).

*4. Analysis of Plaintiff's specific case.*

The first step in asserting religious land use is to file a document, like Plaintiff's Affidavit(s) on the land records, attesting to the religious use of that land. That recorded affidavit is then used as evidence in a State tax proceeding.

Amy Johnson, as the record in this case already shows, is refusing to record Plaintiff's affidavits, without good cause, in an effort to block Plaintiff from having the evidence he needs to provide to the Tax Assessors.

As evidence on the record already shows, Mr. Clark and Mr. Paris have induced Ms. Johnson not to record Plaintiff's documents.

If Ms. Johnson will not record Plaintiff's affidavits, why would she record a State tax lawsuit?

Second, the State tax procedure requires that the Tax Assessors initiate proceedings in State court, in response to an appeal notice. But the record shows that the Tax Assessors, again at the behest of David Clark, are refusing to follow the State appeal procedure.

To move a tax appeal forward, the next step, after receiving a notice, is for the Tax Assessors to respond to the notice with a reason for denying an exemption.

They can't just ignore the notice.

If a dispute still exists, often the matter would go before the County Board of Equalization.

We see though, that per GA Code § 48-5-311 (2022), "*the term 'appeal administrator' means the clerk of the superior court.*". GA Code § 48-5-311(a) (2022).

It is also Ms. Johnson that oversees the County Board of Equalization.

So Ms. Johnson oversees the land records, oversees the County Board of Equalization, and is the gatekeeper to filing any lawsuit in State court.

And she is doing the bidding of David Clark, by blocking Plaintiff's access to the required steps in the process of asserting religious land use.

Plaintiff's repeated efforts over many years to assert religious land use have been consistently denied by David Clark, working through both Ms. Johnson as Clerk and the Tax Assessors, using them by proxy to vent his contempt for Plaintiff.

What possible remedy can Plaintiff have if the same person that won't record Plaintiff's Affidavits of Religious Land Use is also the gatekeeper to all of the other processes found in State law?

The fact that a State has a dispute procedure is not enough.

In order for 28 U.S.C § 1341 to be a barrier to action, "*a plain, speedy and efficient remedy*" must be available in State court to the specific Plaintiff making the allegations, under the specific circumstances of the case.

In other words, that a "*plain, speedy and efficient remedy*" may exist for some other person in some other case regarding Georgia tax disputes is of no consequence.

As such, 28 U.S.C § 1341 cannot be a barrier to action in this specific case, because the evidence on the record shows that this specific Plaintiff does not have "*a plain, speedy and efficient remedy*" in State court due to the unique circumstances of Plaintiff's case.

**B.** **John Williamson, Gerald Davis, William Logan, Gary Engel, Lisa Bradley, and Theresa Gooch are not Immune from Suit**

Regardless of the applicability of 28 U.S.C § 1341 in an official capacity action, 28 U.S.C § 1341 poses no barrier to an individual capacity suit against John Williamson, Gerald Davis, William Logan, Gary Engel, Lisa Bradley, and Theresa Gooch, because an individual capacity action does not seek to enjoin State taxes.

The fact that these Defendants are employed as Tax Assessors is of no consequence with regard to 28 U.S.C § 1341 for individual capacity claims.

To the extent these Defendants are sued in their individual capacities (dk 1, pg 1), per the discussion in Section I above, they are persons within the meaning of § 1983 and do not have Eleventh Amendment Immunity.

Per the discussion of Qualified Immunity in Section II above, these Defendants cannot simply say, "*[we] advance[] the affirmative defense of qualified immunity, [and] [this Court] must dismiss any claims that fail to allege a violation of clearly established law*", (as they did in dk 7-1, pg 11-12), when (1) Plaintiff has clearly alleged facts that Defendants have acted outside the scope of their discretionary authority and Plaintiff has alleged clear violations of established law, and (2) these Defendants have not made any *prima facie* showing that their actions were lawful, and (3), Qualified Immunity is a triable issue, which Plaintiff can overcome with the benefit of Discovery.

Because Qualified Immunity is a triable issue, the District Court erred in dismissing John Williamson, Gerald Davis, William Logan, Gary Engel, Lisa Bradley, and Theresa Gooch at the pleading stage.

As discussed above, the standard of review is *de novo*, and/or independent review, as this concerns the infringement of Constitutionally-guaranteed rights.

## VI. REBECCA MARSHALL

As it pertains to the allegations against Rebecca Marshall, namely that she personally and deliberately mishandled tax payments to aggrieve Plaintiff (dk 1, pg 25-27) we must examine the allegations in light of the case law above.

As Ms. Marshall is being sued in her individual capacity (dk1, pg 1), per the discussion in Section I above, Ms. Marshall is a person within the meaning of § 1983 and does not have Eleventh Amendment Immunity.

Per the discussion of 28 U.S.C § 1341 in Section V above, 28 U.S.C § 1341 does not bar an individual capacity claim against a person that happens to be employed as a Tax Commissioner.

Per the discussion of Qualified Immunity in Section II above, Ms. Marshall cannot simply assert that she, "*advances the affirmative defense of qualified immunity, [and] [this Court] must dismiss any claims that fail to allege a violation of clearly established law*" (dk 10-1, pg 13), without making any effort to demonstrate that her actions were lawful.

Because Qualified Immunity is a triable issue, the District Court erred in dismissing Rebecca Marshall at the pleading stage.

As discussed above, the standard of review is *de novo*, and/or independent review, as this concerns the infringement of Constitutionally-guaranteed rights.

## VII.  DAVID CLARK AND CHARLIE PARIS

### A.  <u>Illegality or Lack of Authority is No Defense</u>

A person who does not have the authority to perform an action, or a person who commits an illegal act, still fits within the meaning of, "*under color of law*".

In *Monroe v. Pape*, the Supreme Court found that acting under color of law includes, "*acts of an official or policeman who can show no authority under state law, state custom, or state usage to do what he did*", when rejecting the assertion by defendants that the commission of a crime or a Constitutional violation was not "*under color of law*" because it was illegal. *Monroe v. Pape, 365 U.S. 167 (1961)*.

Thus, when Mr. Paris and Mr. Clark claim that they had no authority to tell Amy Johnson not to record Plaintiff's documents, for example, and are therefore not accountable for instructing her to refuse to record them (dk 11-1, pg 20), they raise an argument that already failed in *Monroe v. Pape*.

In all likelihood, had Mr. Paris and Mr. Clark not told Ms. Johnson to refuse to record Plaintiff's documents, Ms. Johnson would have recorded them.

That Mr. Paris and Mr. Clark had no authority over the Clerk is not relevant. They, nonetheless, directly caused Plaintiff to be deprived of civil rights, which are guaranteed by the United States Constitution.

All of the allegations in the Complaint are ultimately allegations against David Clark and Charlie Paris for actions which they directly caused, in large part, by inducing the other Defendants to take illegal actions.

Keeping with the holdings in *Monroe v. Pape*, which are in turn based on other Supreme Court precedent, Mr. Clark and Mr. Paris are still liable to Plaintiff for damages for the acts that they took which deprived Plaintiff of his rights, and for the acts that other people took as a result of Mr. Paris and Mr. Clark inducing those other people to perform illegal acts.

Thus, because the illegality or lack of authority is no defense, the dismissal of certain portions of Plaintiff's allegations on the basis that Defendants Clark and Paris had no authority to take those actions, or had no authority to officially direct those actions, should be reversed.

**B.      David Clark and Charlie Paris are Not Immune from Suit**

As it pertains to the allegations against David Clark and Charlie Paris, namely that they induced other people to deprive Plaintiff of his rights, we must examine the allegations in light of the case law above.

As Mr. Clark and Mr. Paris are being sued in their individual capacities (dk1, pg 1), per the discussion in Section I above, they are persons within the meaning of § 1983 and do not have Eleventh Amendment Immunity.

Likewise, because illegality and lack of authority are no defense, per *Monroe v. Pape*, this Court must reject Defendants assertions that their lack of authority insulates them from suit.

Per the discussion of Qualified Immunity in Section II above, Mr. Clark and Mr. Paris cannot simply say they, "*advance[] the affirmative defense of qualified immunity, [and] [this Court] must dismiss any claims that fail to allege a violation of clearly established law*" (as they did in dk 11-1, pg 17 and dk 12-1, pg 20-21), when (1) Plaintiff has clearly alleged facts that Defendants have acted outside the scope of their discretionary authority and Plaintiff has alleged clear violations of established law, and (2) these Defendants have admitted to directing other people to deprive Plaintiff of his rights on purpose, and (3) these Defendants have not made any *prima facie* showing that their actions were lawful, and (4), Qualified Immunity is a triable issue, which Plaintiff has a right to overcome with the benefit of Discovery.

Because Qualified Immunity is a triable issue, the District Court erred in dismissing Mr. Clark and Mr. Paris at the pleading stage.

As discussed above, the standard of review is *de novo*, and/or independent review, as this concerns the infringement of Constitutionally-guaranteed rights.

## CONCLUSION

For the reasons above, Plaintiff-Appellant respectfully requests that the Eleventh Circuit Court of Appeals find the following:

(1) Per the case law cited in Section I above, all Defendants are persons within the meaning of § 1983 and do not have Eleventh Amendment Immunity.

(2) Per the case law cited in Section II above, Qualified Immunity is a triable issue, and Plaintiff has a right to be heard more fully than on a motion to dismiss.

(3) The District Court erred in Dismissing Defendant Stacy Nicholson, because he is not immune from suit, and he has not made any effort to overcome Plaintiff's assertions that his actions were not lawful.

(4) Recording affidavits with the land records is a ministerial task as defined in Georgia State Law, per the discussion in Section IV above.

(5) The District Court erred in dismissing Defendant Amy Johnson, because she is not immune from suit, does not have Judicial Immunity for the allegations made, and she has not made any effort to overcome Plaintiff's assertions that her actions were not lawful.

(6) 28 U.S.C § 1341 does not bar a Federal Court from hearing a State tax matter when Plaintiff can demonstrate that he has not had due process in State

court, and there is no "*plain, speedy and efficient remedy*" available to Plaintiff in State Court under the specific circumstances found in the Complaint.

(7) 28 U.S.C § 1341 does not bar <u>individual capacity</u> actions brought under 42 U.S.C. § 1983.

(8) The District Court erred in dismissing Defendants John Williamson, Gerald Davis, William Logan, Gary Engel, Lisa Bradley, and Theresa Gooch, because they are not immune from suit, and they have not made any effort to overcome Plaintiff's assertions that their actions were not lawful.

(9) The District Court erred in dismissing Defendant Rebecca Marshall, because she is not immune from suit and she has not made any effort to overcome Plaintiff's assertions that her actions were not lawful.

(10) Defendants David Clark and Charlie Paris can be held liable for inducing other people to deprive Plaintiff of his rights, even if they didn't have the authority to order those people to perform those acts.

(11) The District Court erred in dismissing Defendants David Clark and Charlie Paris, because they are not immune from suit and they have made no effort to overcome Plaintiff's assertions that their actions were not lawful.

Date: March 14th, 2024          (s) / nicholas bullock /
_____

Nicholas Bullock

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

## Type-Volume

This document complies with the word limit of FRAP 32(a)(7)(B) because it contains **10, 466** words, excluding parts of the document exempted by FRAP 32(f).

## Typeface and Type-Style

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

(s) / nicholas bullock /

Nicholas Bullock

Dated: March 14th, 2024